DECISION AND JOURNAL ENTRY
Appellant, Charles William Zindle, appeals the decision of the Summit County Court of Common Pleas. We affirm.
 I.
On January 31, 1997, former Eighth Ward Councilman John Frank filed a complaint with the Akron Health Department ("the Health Department") concerning the condition of the improved real property located at 136 South Rose Boulevard in Akron, Ohio. A registered sanitarian, who was an inspector with the Health Department, visited the premises on February 3, 1997, citing the occupant, Mr. Zindle, with numerous violations of Akron City Code 150.10. Pursuant to Akron City Code 150.10, Mr. Zindle was ordered to repair or replace the roofing of his garage, repair or replace the gutters and downspouts of his garage, repair or replace the front porch steps, floor, lattice, ceilings, and rail where necessary, paint the house and garage, and repair or replace the windows and siding on the garage. Mr. Zindle would not allow the inspector access to the property; hence, the inspector cited Mr. Zindle only for violations which could be seen from the outside of the structure. Written repair orders were served on the property by posting them on the property on March 12, 1997.
On March 24, 1997, Mr. Zindle appealed the repair orders to the Housing Appeals Board ("the Board"), appellee. After one continuance was granted to allow Mr. Zindle to obtain legal representation, a hearing was held on May 20, 1997 before the Board, which after his request for a continuance due to illness was denied, Mr. Zindle did not attend. The Board affirmed the orders issued by the Health Department on May 20, 1997. Mr. Zindle then filed an administrative appeal from the Board's ruling in the Summit County Court of Common Pleas on June 19, 1997. The common pleas court, after conducting a hearing and hearing additional evidence, affirmed the decision of the Board on September 29, 1999. This appeal followed.
 II.
Mr. Zindle argues eight assignments of error. We will address each in turn, consolidating those that implicate similar issues to facilitate review.
 A.
First Assignment of Error
 The Court erred in not finding the Akron Health District is a separate political subdivision of the State, independent of the [sic] City of Akron with which it is coterminus, is governed by the laws of the state, and cannot constitutionally and/or legally and/or under the Charter of the City of Akron enforce Chapter 150, an ordinance of the City of Akron, upon which the Akron District Board of Health has taken no action.
Second Assignment of Error
 The Court erred in not finding the Housing Appeals Board, a creature of the council of the City of Akron through Chapter 150, Akron City Code, has no constitutional and/or legal authority to hear appeals based upon Akron Health District prosecutions of matters through said Chapter 150 and only does so under color of law.
Mr. Zindle avers that the Health Department does not have the authority, under the Akron City Charter and the Ohio Constitution, to enforce Section 150 of the Akron City Code. Moreover, he argues that the Board does not have jurisdiction to hear appeals of enforcement orders issued by the Health Department. We disagree.
"Health Districts, and the boards formed thereunder, are state agencies." Johnson's Markets, Inc. v. New Carlisle Dept. ofHealth (1991), 58 Ohio St.3d 28, 33. As the protection and preservation of public health is one of the foremost functions of government, the state may constitutionally enact legislation to that end. Id. at 34.
Although Health District Boards are state agencies, a city may "establish and maintain under authority of its charter" an "administration of public health different from" that set forth in the Revised Code. R.C. 3709.05. The City of Akron has done so in Sections 78 through 82 of its Charter. Section 81 of the Akron City Charter provides that "[t]he Health Commission shall have general police powers in enforcing its rules, regulations and ordinances." Furthermore, "[t]he health commission, under the charter, has full legislative power in all matters concerning the public health and sanitation and is not controlled by ordinances passed by the city council." Beacon Journal Publishing Co. v.City of Akron (1965), 3 Ohio St.2d 191, 197. However, "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution.
In the instant case the City of Akron ("the City") has provided for a Health Department consisting of a Health Commission. Section 78, Akron City Charter. In the Akron City Code, the City has provided that the Housing Inspector, be either the Director of Health or his representative, Akron City Code 150.01(A), and be given the power to enforce Section 150 of the Akron City Code. Moreover, the Director of Health is given authority in Section 80 of the Akron City Charter to "enforce preventive measures necessary to general healthfulness[.]" An appeals process is also provided for orders to comply with Section 150 of the Akron City Code in Section 150.04 of the Akron City Code. The appeals process provides for a hearing before the Board. Akron City Code 150.05(A).
Although "[t]he health commission, under the charter, has full legislative power in all matters concerning the public health and sanitation and is not controlled by ordinances passed by the city council," Beacon Journal Publishing Co.,3 Ohio St.2d at 197, the City may permit the Health Commission to enforce the City's Code and allow appeals therefrom pursuant to Section 3, Article XVIII, Ohio Constitution. However, while the Health Commission may accept such additional responsibilities and burdens, we do not reach the issue of whether the City could force them upon the Health Commission. Hence, we conclude that both the Health Commission and the Housing Appeals Board had jurisdiction based upon the facts of the instant case and that such jurisdiction did not violate either statuary law or the Ohio Constitution. Accordingly, Mr. Zindle's first two assignments of error are overruled.
 B.
Third Assignment of Error
 The Court erred in refusing to admit proof that the enforcement of Chapter 150, Akron City Code was unconstitutional in its application by not only the means of enforcement but by the alleged problems not rising to the level of affecting the health, safety and welfare of the community.
Mr. Zindle proffered evidence to the trial court to show that the Health Commission was enforcing Akron City Code 150 in a discriminatory manner. However, on July 19, 1999, the trial court ruled that the proffered evidence was irrelevant and accordingly refused the proffer of additional evidence. Mr. Zindle avers that the trial court should have accepted the proffered evidence as it tended to show discriminatory enforcement and that the violations that he was cited for do not affect public health, safety, or welfare. Moreover, he argues that, as the violations that he was cited for do not threaten public health, safety, or welfare, he cannot be constitutionally ordered to repair them. We disagree.
Where a defendant has articulated no classification defining the difference between those prosecuted and himself, he must show intentional and purposeful discrimination. Cleveland v.Trzebuckowski (1999), 85 Ohio St.3d 524, 531. To establish selective or discriminatory prosecution under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution, a defendant bears the heavy burden of establishing, at least primafacie, that (1) while others who have committed the same conduct have not been prosecuted, he has been singled out for prosecution, and (2) that the government's choice to prosecute him was based on invidious motive or made in bad faith, such as being based upon his race, religion, or the desire to prevent his exercise of constitutional rights. Id., quoting State v. Flynt (1980),63 Ohio St.2d 132, 134. There is a strong presumption that the prosecution was not discriminatory. Trzebuckowski,85 Ohio St.3d at 532.
Initially, we note that Mr. Zindle asserts that the proffered evidence would show that the Housing Inspector passed other buildings with similar violations; hence, he asserts that this evidences that the violations do not harm public health, safety, and welfare. We conclude that while this evidence may show discrimination, it does not show that the condition of his property was not a hazard to public health, safety, or welfare.
Although Mr. Zindle avers that his prosecution was politically motivated, he has not alleged that the prosecution was based upon race, religion, or other improper motive. Hence, we conclude that the trial court did not err in ruling the evidence irrelevant and therefore inadmissible.
Next Mr. Zindle argued that he cannot be constitutionally ordered to repair conditions, which do not affect public health, safety, or welfare. "The protection and preservation of public health is one of the prime governmental concerns and functions of the state as a sovereignty." Johnson's Markets, Inc.,58 Ohio St.3d at 34. Akron City Code 150.10 provides, in relevant part, that: (1) "All downspouts and gutters shall be properly installed and kept in sound working condition and good repair"; (2) "Every window, door, and basement hatchway shall be reasonably weathertight, watertight and rodent-proof"; (3) "Every * * * roof 
and eave shall be reasonably weathertight, watertight, and rodent-proof and shall be kept in sound working condition and good repair"; (4) "All exterior surfaces of buildings on a premises shall be clean and maintained in good repair so as to provide sufficient covering and protection of the structural surface underneath against deterioration * * * [and] an exterior surface of a building shall be deemed to be out of repair if the surface is blistered, cracked, flaked, scaled, or chalked away, or is loose or has fallen"; and (5) "Every inside and outside stair * * * shall be kept in sound condition and good repair." We cannot conclude that Akron City Code 150, which serves to prevent the decay and infestation of buildings does not serve to protect public health, safety, and welfare or is unconstitutional in its application to Mr. Zindle's property. Accordingly, his third assignment of error is overruled.
 C.
Fourth Assignment of Error
 The Court erred in basing its findings and Order upon the date of initial inspection, when the appellant was merely ordered to comply and the uncontroverted evidence reveals appellant did comply by the date of the evidentiary hearing with regard to porch steps and painting.
Fifth Assignment of Error
 The Court erred in finding, "Zindle further testified that he had since done some patch work on his garage roof" and "the roof of his garage leaked" implying the leak was at the date of the 1997 inspection and the patch work was done after this inspection, when in fact the only testimony was that it was done "months before that (the 1997 inspection)" (JT37, 11), but after a 1991 politically motivated inspection.
Sixth Assignment of Error
 The Court erred in its finding a problem with regard to a door of an uninhabited garage missing a pane of glass, a pane which was removed by the owner more than twenty years earlier for ventilation purposes, and to which no evidence was introduced to indicate this has any relationship with the health, safety and welfare of the community, this being an unconstitutional application and an infringement upon the freedom to use private property, Art I § 19 Ohio Const.
Seventh Assignment of Error
 The Court erred in basing its order on a finding that a [sic] uninhabited garage has a roof with shingles at least twenty-three years old, without any evidence, law, rule, and/or ordinance which indicates a twenty-three year old roof is illegal, dangerous, and/or violates the health, safety, and welfare of the community.
Eight Assignment of Error
 The court [sic] erred in basing its order upon a finding that, "the gutters and downspouts were in poor condition" and upon any other item which was cited in the 1991 inspection and `Order to Comply' (later dismissed as "not worth pursuing"), which were then the same during the 1996 visit by a sanitarian (who stated he saw no health, safety and welfare violations) and also listed in the 1997 `Order to Comply', [sic] when no proof of degree was offered and no proof of a health, safety and welfare of the community or nuisance problem was offered.
In Mr. Zindle's remaining assignments of error, he asserts that the trial court erred in basing its findings on the condition of Mr. Zindle's property at the time of the initial inspection, erred in finding that the garage roof leaked, erred in finding that a pane of glass in his garage was broken or missing, erred in finding that his porch steps were in need of repair, erred in finding that his twenty-three year old roof was in need of service, and erred in finding that his gutters had deteriorated and were in need of repair. Essentially, he alleges that the trial court acted against the manifest weight of the evidence in affirming the Board's decision. We disagree.[1]
In reviewing an appeal from the decision of an administrative agency, the common pleas court is required to weigh the evidence in the record, as well as any additional evidence admitted pursuant to Section 2506.03 of the Ohio Revised Code, to determine whether there is a preponderance of reliable, probative, and substantial evidence to support the administrative decision.Dudukovich v. Lorain Metro. Hous. Auth. (1979), 58 Ohio St.2d 202,207. In determining whether the agency's decision is supported by reliable, probative, and substantial evidence, the common pleas court is required to give "due deference to the administrative resolution of evidentiary conflicts." Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111.
"[In] reviewing an order of the court of common pleas which determined an appeal from an administrative agency based upon the manifest weight of the evidence, this court's scope of review is limited to determining whether the common pleas court abused its discretion." In re Ghali (1992), 83 Ohio App.3d 460, 465-66, citing Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
In the instant case, the evidence presented before the Board tended to show that the gutters on the garage were rusted through, that there was a problem with the front steps, that paint was peeling on the garage and house, and that windows were missing from the garage. Moreover, at the hearing conducted before the court of common pleas, Mr. Zindle admitted that the garage roof was patched, that the house needed paint, that the steps were damaged when someone ran into them, and that the gutters were corroded. However, he asserts that he has completed repairs on many of these items. After thoroughly reviewing the evidence, we adduce that the trial court did not abuse its discretion in finding that the Board's decision was based on the preponderance of probative, substantial, and reliable evidence. Moreover, Mr. Zindle's argument appears to be that he has complied with the order. Although compliance with the order may render further proceedings to compel compliance with the order improper, it does not render the initial order improper. Accordingly, Mr. Zindle's remaining assignments of error are overruled.
 III.
Mr. Zindle's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant. Exceptions.
 ____________________________________ WILLIAM G. BATCHELDER, FOR THE COURT.
BAIRD, J. and WHITMORE, J. CONCUR.
[1] His remaining arguments were not separately argued in his brief, and hence, we decline to address them. App.R. 12(A)(2).