Day, J.
 

 The contention of the relator is that the department of health of the city of Akron, as it now exists, is a department of the city government, functioning as such under the provisions of the city charter, and is, therefore, required to comply with the charter provisions which place all employees of that department in the classified civil service of the municipality.
 

 The respondents counter with the contention that the department of health is an agency of the state, created by the Hughes Act (108 Ohio Laws, part 1, 236) and the Griswold Act (108 Ohio Laws, part 2, 1085) as amended, and as such is governed by the laws of the state and not by city charter; that by virtue of the provisions of the Griswold Act, as amended, the employees of the city department of health are not brought under any civil service requirements.
 

 Protection and preservation of public health are among the prime governmental concerns and functions of the state as a sovereignty. See
 
 City of Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, 156 N. E., 210,
 
 *4
 
 52 A. L. R., 518. Under the powers reserved to it by the Constitution, the state, acting through the General Assembly, may enact general laws to that end. See
 
 State, ex rel. Village of Cuyahoga Heights,
 
 v.
 
 Zangarle,
 
 103 Ohio St., 566, 134 N. E., 686.
 

 In accordance with this reserved power, the General Assembly first enacted the Hughes Act and later, in amended form, the Griswold Act,
 
 supra,
 
 by the terms of which the state was divided into health districts.
 

 That part of the Griswold Act which was designated as Section 1261-16, General Code, reads:
 

 “For the purposes of local health administration the state shall be divided into health districts. Each city shall constitute a health district and for the purposes of' this act shall be known as and hereinafter referred to as a city health district. The townships and villages in each county shall be combined into a health district and for the purposes of this act shall be known as and hereinafter referred to as a general health district. As hereinafter provided for, there may be a union of two general health districts or a union of a general health district and a city health district located within such district.”
 

 That part of the Griswold Act, which was designated as Section 4404, General Code, reads:
 

 “The council of each city constituting a city health district, shall establish a board of health, composed of five members to be appointed by the mayor and confirmed by the council, to serve without compensation, and a majority of whom shall be a quorum. The mayor shall be president by virtue of his office. Provided that nothing in this act contained shall be construed as interfering with the authority of a municipality constituting a municipal health district, making provision by charter for health administration other than as in this section provided.”
 

 In dividing the state into health districts, the Gen
 
 *5
 
 eral Assembly, in the same act, also repealed the then existing statutes which authorized municipalities to establish and appoint boards of health as part of their local governments. This, in our opinion, evidences a legislative intent to withdraw from municipalities the powers of local health administration previously granted to them, and to create in each city a health district which is to be a separate political subdivision of the state, independent of the city with which it is eoterminus, and to delegate to it all the health powers thus withdrawn from municipalities. As such, the city health district becomes an agency of the state and is governed by the laws of the state.
 

 To so hold is not to interfere with municipal home rule. By conferring* upon cities the authority to rule themselves, the state did not surrender its sovereign power to protect the public health of the state.
 

 Section 3, Article XVIII of the Ohio Constitution, conferring powers of local self-government upon municipalities, provides: “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations,
 
 as are not in conflict with general laws.”
 
 (Italics ours.)
 

 This constitutional provision does not grant absolute powers of self-government, but limits their exercise to matters and things purely local in nature. The protection and preservation of public health is of a state-wide concern, with respect to which the Legislature has jurisdiction.
 

 “The health of the inhabitants of a city and the sanitary condition existing in any one city of the state are of vast importance to all the people of the state because of the danger through ®®Bial and business relations with other parts of the state of spreading contagious and infectious diseases. For this reason, the state has not delegated to the municipal authorities complete and absolute control over the health of
 
 *6
 
 municipalities’ inhabitants.” 20 Ohio Jurisprudence, 540, Section 5.
 

 Appellant contends that under and by virtue of the proviso contained in Section 4404, General Code, a charter city has the power to provide for health administration, and that nothing in the act contained should be construed as interfering with that power; that
 
 “a
 
 charter city is authorized to get up a health board different than that provided in Section 4404, General Code, and that is exactly what the city of Akron has done by its charter.”
 

 The proviso contained in Section 4404, General Code, reads: “Provided that nothing in this act contained shall be construed as interfering with the authority of a municipality constituting a municipal health district, making provision by charter for health administration other than as in this section provided.”
 

 It is our opinion that under the above-quoted provision, a municipality constituting a city health district is authorized to make reasonable provision, by charter, for supplementing the health administration work covered by the aforementioned section of the statute. To sustain the contention of appellant that the phrase “other than” was used by the Legislature in the sense of “different from” may lead to ludicrous situations, for it is conceivable that local health administration may be so “different from” that provided by statute as to be contrary thereto. The Legislature could not possibly have intended to use the phrase in that sense.
 

 The next question arising is whether the employees of the Akron city board of health are subject to the civil service requirements imposed by general state law.
 

 The Hughes Act (108 Ohio Laws, part 1, 236, at 248) placed the employees of health districts under civil service. That portion of the act which was designated therein as Section 4408, General Code, read:
 

 
 *7
 
 “In any municipal health district, the board of health, or person or persons performing the duties of a board of health, shall appoint within the classes fixed by the state civil service commission of Ohio for whole-time service, a health commissioner, a public health nurse and a clerk. It may also appoint physicians, public health nurses and other persons, within the classes fixed by the state civil service commission of Ohio. Where the municipal civil service commission has held examinations for appointment within the classes so fixed, and has certified lists of eligibles for the classes from which appointment is to be made, such appointments shall be made from the lists so certified, but if the municipal civil service commission has not held examinations in accord with the classification made by the state civil service commission, or cannot furnish lists of eligibles for such classes, appointments shall be made from lists of eligibles furnished by the state civil service commission as hereinbefore provided. Where no list of eligibles is furnished by the municipal or state civil service commission, temporary appointments may be made for periods not to exceed ninety days with the consent of the state civil service commission. Provided that the status of persons employed at the time this act shall take effect by a board of health or health department under the provisions of municipal civil service for whole-time service shall not be affected by the passage of this act.”
 

 The Griswold Act (108 Ohio Laws, part 2, 1085) amended the above section and omitted therefrom all language having reference to civil service, thereby manifesting a legislative intent, as clearly as if expressed in language, that employees of the health district are to be exempt from the operation of civil service requirements. The Legislature did so, obviously on the theory that it is not practicable to ascertain the merit and fitness of the employees of such districts by
 
 *8
 
 competitive civil service examinations. In such determination we find no abuse of legislative authority.
 

 We hold that where the state, by legislative enactment, withdraws from cities the health powers previously granted to them and transfers them to newly created city health districts, such health districts become agencies of the state government, and their employees are governed by state law.
 

 Judgment affirmed.
 

 Weyganet, C. J., Zimmerman, Williams, Matthias and Hart, JJ., concur.