JOHNSON'S MARKETS, INC., APPELLANT, *v.* NEW CARLISLE DEPARTMENT OF HEALTH, APPELLEE; OHIO DEPARTMENT OF AGRICULTURE, APPELLANT.

[Cite as Johnson's Markets, Inc. *v.* New Carlisle Dept. of Health (1991), 58 Ohio St. 3d 28.]

(No. 89-1916—Submitted November 27, 1990—Decided March 6, 1991.)

"* * *

"* * *

*Gorman, Veskauf, Henson & Wineberg* and *Robert A. Wineberg,* for appellant Johnson's Markets, Inc.

*Livingston, Sell, Johnston & Kemmer* and *A. Melvin Kemmer,* for appellee.

*Lee I. Fisher,* attorney general, *Cheryl D. Minsterman* and *Tamara A. Squire,* for appellant Ohio Department of Agriculture.

HOLMES, J. The major issue presented in this case is whether, in construing the various sections of Ohio statutory law pertaining to the public health in regard to places where food is manufactured and places where food and food products are sold and handled within Ohio, it was the legislative scheme, or intent, that all such regulatory control be vested in the Department of Agriculture or, conversely, whether it was intended that some regulation thereof may be exercised by boards of city health districts.

A secondary query presented is: assuming city health districts have been granted some degree of regulatory authority over places where food is sold, handled or manufactured, whether Regulation 83-02 adopted by the New Carlisle Department of Health for local application is in an irreconcilable conflict with the general regulations adopted by the Department of Agriculture and, if so, whether the local regulation or the general regulations prevail.

As to the first issue, we hold that all the applicable state statutes being read *in pari materia* may reasonably be interpreted to grant city health districts some co-existing right of regulation of the places where food is manufactured, sold or handled, and the inspection of foods therein.

There are a number of Revised Code chapters and Administrative Code sections dealing with various aspects of the protection and preservation of the public health as it would relate to food and foodstuffs. The General Assembly has, in the main, delegated the power to regulate the production, processing, handling and sale of food and food products to three agencies of the state, *i.e.*, the Department of Agriculture and its Director; the Department of Health, its Director, and the Public Health Council; and local boards of health, as in the present case. Our task of interpreting the precise regulatory authority over foodstuffs has been complicated in that some of these legislatively granted powers would appear to have been placed within the jurisdiction of more than one of these agencies. This would suggest that the exercise of such powers may create a dualism of control, and result in overlapping and conflicting regulation.

We have previously set forth three of the sections of law granting the

Director of Agriculture certain powers to regulate establishments processing foodstuffs, *i.e.,* R.C. 913.41, 913.42 and 925.01.

Other sections of law provide the Director of Agriculture additional authority to regulate foodstuffs in Ohio. Among these are sections providing for the regulation and/or inspection by the Director of commercial dealers engaging in the business of handling, weighing, sampling and testing of milk and cream, and bulk tank operators of milk and cream[1]; vendors and manufacturers of ice cream and other frozen desserts[2]; bakeries[3]; manufacturers and bottlers of soft drinks[4]; operators of cold storage warehouses or locker plants[5]; vegetable and fruit canneries[6]; poultry and poultry products[7]; and slaughterhouses and meat canneries.[8]

The Director of Agriculture has also been granted specific powers within the Pure Food and Drug Act, R.C. Chapter 3715, insofar as such chapter deals with food. Such regulatory powers include the labeling of canned fruits and vegetables[9]; standards for flavoring extracts[10]; manufacture and sale of adulterated candy[11]; and the prevention of the sale of adulterated and misbranded foods.[12]

Pursuant to R.C. Chapter 3715, the Director of Agriculture is empowered to promulgate regulations fixing and establishing for foodstuffs a reasonable definition and standard of identity, a reasonable standard of quality, and the fill of containers utilized when, in his judgment, such action will promote fair dealing in the interest of consumers. R.C. 3715.58.

The Ohio Department of Health has also been granted certain regulatory powers over foodstuffs and the processing of foodstuffs. The Department of Health consists of the Director of Health and the Public Health Council. R.C. 3701.02. Among the duties of the Public Health Council is the promulgation of regulations making up the sanitary code to be generally applicable throughout the state. R.C. 3701.34.[13] This section does not specifically grant any regulatory control over foodstuffs. However, there are other sections of law that do grant the Public Health Council authority to promulgate regulations regarding foodstuffs. Exemplary of this, R.C. 3707.372 grants regulatory authority to the Public Health Council over the production, transportation and processing of milk. It should be noted, however, that the regulatory power granted in R.C. 3707.372 to the Public Health Council, over the hand-

---

[1] R.C. 917.04; 917.11; 917.19.

[2] R.C. 3717.52.

[3] R.C. 911.02.

[4] R.C. 913.23.

[5] R.C. 915.02 and 915.15.

[6] R.C. 913.17.

[7] R.C. 918.21 to 918.31.

[8] R.C. 918.02.

[9] R.C. 3715.14; 3715.15; 3715.16.

[10] R.C. 3715.07.

[11] R.C. 3715.23.

[12] R.C. 3715.52.

[13] Certain specific statutory authority has been granted the Public Health Council, such as control over private water systems, R.C. 3701.344; classification and registration of hospitals, R.C. 3701.07; standards for hospital facilities, R.C. 3701.40; and contagious or infectious disease reports, R.C. 3701.24.

ling and processing of milk, specifically excepts any standards adopted by the Director of Agriculture under the Pure Food and Drug Act, R.C. Chapter 3715.

The Public Health Council has also been granted some co-existing authority with the Director of Agriculture to adopt regulations for the prohibition of adulterated foods, within the Pure Food and Drug Act. R.C. 3715.69. This grant of power, however, excepts the authority granted the Director of Agriculture to provide reasonable standards of food identity, standards of quality, and for the fill of food containers. R.C. 3715.58.

Another specific area in which the Department of Health and the Public Health Council have been granted authority to adopt regulations and standards regarding foodstuffs is "food service operations," pursuant to R.C. 3732.02. This section is as follows:

"The public health council subject to sections 119.01 to 119.13, inclusive, of the Revised Code, shall make regulations of general application throughout the state governing food service operations and providing uniform sanitation standards, approval of plans, equipment, including refrigerated bulk milk dispensers, and supplies by the department or city or general health districts; except that such regulations and standards shall be limited to that portion of the premises utilized for the food service operation."

The Ohio Attorney General has opined that R.C. 3715.69 does not provide the Public Health Council with authority to prescribe sanitation standards for food establishments. The Attorney General stated that under R.C. 925.01, 913.41 and 913.42, only the Director of Agriculture has the authority to prescribe sanitary regulations for food processing and food manufacturing establishments other than those regulated under R.C. 3707.371 to 3707.376 (concerning milk handlers) and R.C. Chapter 3732 (concerning food service operations). The Attorney General based his opinion on the language contained in R.C. 3732.02, which provides that the Public Health Council "shall make regulations of general application throughout the state governing food service operations and providing uniform sanitation standards * * *; except that such regulations and standards shall be limited to that portion of the premises utilized for the food service operation." See 1975 Ohio Atty. Gen. Ops. No. 75-056.

The Department of Agriculture stresses in its brief in this court that the same ruling should be applied here to these facts. This Attorney General opinion may well have correctly set forth the law as it would relate to the Public Health Council and its authority to make regulations applicable to food processing establishments. However, we are not called upon here to determine that issue, but are reviewing the statutory authority specifically granted to city health districts to promulgate such regulations pertaining to food processing establishments and to make the necessary related inspections.

Each city, as is New Carlisle, is designated by statute as a "city health district," whereas townships and villages in each county are combined and known as "general health districts." R.C. 3709.01. Health districts, and the boards formed thereunder, are state agencies. *Bd. of Health of St. Bernard* v. *St. Bernard* (1969), 19 Ohio St. 2d 49, 48 O.O. 2d 57, 249 N.E. 2d 888, paragraph two of the syllabus. Such health-oriented agencies are administrative arms of the Ohio Department of Health.

New Carlisle takes a position

which was adopted by the court of appeals that, in construing other sections of law harmoniously with the above sections which grant the Director of Agriculture certain authority in regard to foodstuffs and their handling, such authority is not exclusive, and that some co-existing authority to regulate and inspect food establishments has been vested within city health departments. New Carlisle most particularly relies upon R.C. 3709.20 and 3709.22, as set forth *supra,* for such authority.

The protection and preservation of public health is one of the prime governmental concerns and functions of the state as a sovereignty. See *Wooster* v. *Arbenz* (1927), 116 Ohio St. 281, 156 N.E. 210. Under the powers reserved to it by the Constitution, the state may enact general laws to that end. See *State, ex rel. Cuyahoga Heights,* v. *Zangerle* (1921), 103 Ohio St. 566, 134 N.E. 686, which upheld the constitutionality of the Hughes Act, 108 Ohio Laws, Part 1, 236, and the Griswold Act, 108 Ohio Laws, Part 2, 1085, and which Acts divided the state into health districts and general health districts.[14]

As seen by the statutes set forth above, the General Assembly has provided that certain health matters related to foodstuffs be regulated by the Department of Agriculture, or the Department of Health, and that the en-forcement of the latter department's regulations in this regard may be through local departments of health acting as state agencies. The General Assembly has also specifically provided that some sanitary regulatory powers over foodstuffs may be exercised by city health districts independent of the Department of Health or the Department of Agriculture.

Quite correctly, the parties here have not presented or argued this matter upon the basis of a municipality's home rule powers as granted under Section 3, Article XVIII of the Ohio Constitution.

This court, in *Eastlake* v. *Ohio Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363, 20 O.O. 3d 327, 422 N.E. 2d 598, discussed the home rule powers of a municipality in enacting building regulations on behalf of its state certified building department, which local regulations were claimed to be in conflict with statutory authority granted to the Ohio Board of Building Standards. However, the underlying basic holding was based upon an interpretation of the overriding statutory regulatory authority granted the state agency. In this regard, this court held in paragraph one of the syllabus that:

"A municipal ordinance imposing more restrictive standards of construction for industrialized units than those mandated by R.C. Chapters 3781 and

---

[14] In *State, ex rel. Mowrer,* v. *Underwood* (1940), 137 Ohio St. 1, 17 O.O. 298, 27 N.E. 2d 773, this court held that the legislative withdrawal of the health powers previously granted to cities to form departments of health and to transfer such authority to city health districts, did not violate the constitutional principle of home rule as contained in Section 3, Article XVIII of the Ohio Constitution. This was decided for the reason that the home rule constitutional provision does not require the state to "surrender its sovereign power to protect the public health of the state." *Id.* at 5, 17 O.O. at 299, 27 N.E. 2d at 775-776. The court in *Underwood* further stated, "[t]his constitutional provision does not grant absolute powers of self-government but limits their exercise to matters and things purely local in nature. The protection and preservation of public health is of a state-wide concern, with respect to which the legislature has jurisdiction." *Id.* at 5, 17 O.O. at 299, 27 N.E. 2d at 776.

3791 is in conflict with the general laws and is *ipso facto* invalid, thereby giving the Ohio Board of Building Standards, pursuant to R.C. 3781.10(E)(6), just cause for revoking the certification of the municipality as local enforcement authority for the Ohio Building Code."

This court then went on to state that "[t]he conclusion we reach is consistent with application of the home rule powers of municipalities expressed in Section 3, Article XVIII of the Ohio Constitution * * *." *Id.* at 368, 20 O.O. 3d at 330, 422 N.E. 2d at 601.[15]

We are not confronted here with a question dealing with a potential conflict between a municipal sanitary regulation enacted pursuant to home rule constitutional authority and a state statute. Instead, we are dealing with two governmental entities, *i.e.,* the Department of Agriculture and a city health district, both performing their regulatory functions pursuant to statutory enactments. Therefore, the questions here must be answered by an interpretation of all the pertinent statutory enactments and regulations passed thereunder.

A number of basic rules must be followed by a reviewing court in construing the regulations and statutes at issue. First, all statutes which relate to the same general subject matter must be read *in pari materia*. See *Maxfield v. Brooks* (1924), 110 Ohio St. 566, 144 N.E. 725; *State, ex rel. Bigelow,* v. *Butterfield* (1936), 132 Ohio St. 5, 6 O.O. 490, 4 N.E. 2d 142. And, in reading such statutes *in pari materia,* and construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all such statutes. *Maxfield* v. *Brooks, supra*. The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. See *Benjamin* v. *Columbus* (1957), 104 Ohio App. 293, 4 O.O. 2d 439, 148 N.E. 2d 695, affirmed (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854; *In re Hesse* (1915), 93 Ohio St. 230, 112 N.E. 511. All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. *State* v. *Glass* (1971), 27 Ohio App. 2d 214, 56 O.O. 2d 391, 273 N.E. 2d 893; *State* v. *Hollenbacher* (1920), 101 Ohio St. 478, 129 N.E. 702. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict. *Couts* v. *Rose* (1950), 152 Ohio St. 458, 40 O.O. 482, 90 N.E. 2d 139.

In the judicial interpretation of potentially conflicting laws, certain statutory rules of construction must be

---

[15] Another case which dealt with a local building department which had been certified by the State Board of Building Standards, and had adopted a different code procedure for appeals than that provided by the State Building Code, is *In re Cincinnati Certified Bldg. Dept.* (1983), 10 Ohio App. 3d 178, 10 OBR 249, 461 N.E. 2d 11. In holding that there was a conflict, and thus decertifying the Cincinnati Building Department, the Court of Appeals for Franklin County stated that:

"This case does not present a constitutional home-rule problem. The city of Cincinnati still may operate a building department and enforce the Cincinnati Building Code, using its own appellate process, so long as its substantive provisions do not conflict with the State Building Code. See *Eastlake* v. *Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363 [20 O.O. 3d 327].

"At this time, there is no issue before the court of the effect of dual enforcement of substantially identical provisions in the state code and Cincinnati code with inconsistent results." *Id.* at 180, 10 OBR at 251, 461 N.E. 2d at 13.

considered. As a threshold we observe that R.C. 1.47 provides:

"In enacting a statute, it is presumed that:

"* * *

"(C) A just and reasonable result is intended;

"(D) A result feasible of execution is intended."

Another statutory rule of construction which must be considered if, and when, statutes being reviewed by a court are found to be in irreconcilable conflict, is R.C. 1.51, which states:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

It is also important to note when construing Administrative Code provisions that R.C. 1.59(F) provides that a "rule" is defined to include "regulations." Therefore, the statutory rule of construction, R.C. 1.51, applies to the regulations in this case, *i.e.,* Ohio Adm. Code Chapter 901:3-29, adopted pursuant to law by the Ohio Department of Agriculture, and to Regulation 83-02, adopted pursuant to law by the New Carlisle Department of Health.

In reviewing all the sections of law applicable to the issues presented here *in pari materia,* we conclude that the General Assembly granted to city health districts a degree of authority in regulating places where food is manufactured, handled, or sold. City health districts are, by R.C. 3709.20, given the authority to "make such orders and regulations as are necessary for [their] own government, for the public health, the prevention or

restriction of disease, and the prevention, abatement, or suppression of nuisances." Also, in order to facilitate such rule-making powers, the General Assembly empowered city health districts by way of R.C. 3709.22 to inspect places "where food is manufactured, handled, stored, sold, or offered for sale * * *." In neither of these sections is there a specific limitation that such authority be exercised in such manner as not to be in conflict with the regulatory powers of the Department of Agriculture concerning the sanitation of places handling or selling foodstuffs.

However, all powers of governmental agencies are legislatively granted, and such agencies have only such regulatory authority as is granted, and the acts of such agency may not exceed such authority or be in direct conflict with the exercise of specific powers granted to state departments for statewide regulatory control.

In considering all the statutes granting to the Director of Agriculture rather broad regulatory authority over foodstuffs and the places where they are manufactured, handled and sold, we conclude that it was the intention of the General Assembly to grant exclusivity to the Director in matters of establishing standards of purity and quality of foodstuffs, and their classification, labeling and packaging, which regulations are to be applied throughout the state. We also conclude that it was the intent of the General Assembly to grant local health districts the necessary regulatory control over foodstuffs and the places where they are sold in order to provide for the public health, the prevention of disease and the abatement of nuisance. Furthermore, we conclude that any such regulations adopted by the local health districts must be limited to these con-

siderations of protecting the public health, preventing disease, and abating nuisance.

Both the Department of Agriculture's regulations contained within Ohio Adm. Code 901:3-29-01 through 901:3-29-08, and Regulation 83-02 of the New Carlisle Board of Health have been adopted for the purpose of providing proper sanitary conditions for the places handling or selling foodstuffs. We shall not scrutinize and set forth a comparative analysis of the sections in each of these regulations in order to determine those that are in irreconcilable conflict. It only need be stated that even though there be some differences in the treatment of the same subject, it appears that, generally, the regulations may be read harmoniously and are *not* irreconcilably in conflict. Compliance with most sections of one regulation would be compliance with the other.

It is debatable that there are some sections in the New Carlisle Department of Health Regulation 83-02 which provide for some sanitary requirements that differ, to a point of inconsistency, with the Department of Agriculture regulations. An example of these is Ohio Adm. Code 901:3-29-01, which simply states that the places in question be "properly lighted," while the local regulation requires that they be "illuminated to a minimum of forty foot candles." Section 6.3, Regulation 83-02. Similarly, Ohio Adm. Code 901:3-29-06 simply requires that lavatories and washrooms "shall be supplied with soap, water, and individual towels * * *," while the local regulation specifies that "[a]ll handwashing facilities shall include a minimum of warm (110° F.) running water, dispensed soap, and approved drying facilities," Section 6.5, Regulation 83-02. Also, relative to utensils used to prepare food, Ohio Adm. Code

901:3-29-02(D) simply states that these items be "thoroughly cleaned daily," whereas Section 6.8 of Regulation 83-02 specifies that such utensils "shall be thoroughly cleaned and subjected to an approved bactericidal process" on a daily basis.

If the above comparisons, or others within these regulations, result in a determination that a conflict exists, the standards of construction found in R.C. 1.51 pertain. Applying those standards, the special, or local, provision prevails as an exception to the general provision, unless the general provision is a later adoption and the manifest intent is that the general provision prevail.

The general regulations, Ohio Adm. Code 901:3-29-01 *et seq.*, were initially promulgated by the Director, as AG-35-02.1, effective December 23, 1966, and renumbered in 1977, as currently designated. Regulation 83-02 of the New Carlisle local health district was adopted on August 15, 1983. Clearly, the local regulation is the later adoption, but even if not the later, there is no basis either in the statutes or within the Department of Agriculture's regulations that the general provisions prevail over the local.

This court, construing R.C. 3709.20, 3709.22, 913.41 and 913.42 *in pari materia,* considering the legislative intent of the Ohio General Assembly, and applying the statutory rules of construction provided in R.C. 1.51, holds that the Ohio Department of Agriculture does not have exclusive authority to regulate the sanitary conditions of food establishments. Moreover, local boards of health may also statutorily exercise some sanitary regulatory authority over food establishments.

In conclusion, if it had been the desire of the General Assembly to

grant to the Director of Agriculture the exclusive jurisdiction to regulate and inspect the sanitary conditions of food establishments in Ohio to the exclusion of city health districts, it would have done so by appropriate statutory amendments.

Accordingly, based upon all the foregoing discussion, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.