JOURNAL ENTRY AND OPINION
The Chief of Police for the City of Brook Park, Thomas A. Dease, appeals from a decision of the common pleas court which granted summary judgment to the City's Director of Public Safety, Eileen M. McNamara, in connection with Dease's complaint for declaratory judgment and injunctive relief, in which he challenged the authority of the Safety Director to issue directives to him regarding the stationing and transfer of police officers in the Brook Park Police Department. The Police Chief claims that the Safety Director exceeded her authority because he asserts that the City's Charter and ordinances vest the Police Chief with exclusive authority to station and transfer officers. We agree and therefore reverse the judgment of the court, enter summary judgment for the Police Chief, and declare that the Chief of Police has exclusive control over the stationing and transfer of police officers in the City of Brook Park.
The procedural history of this case reveals that on February 1, 2000, the Police Chief filed a complaint against the Safety Director seeking a declaration from the common pleas court that the Safety Director interfered with his lawful authority as Chief of Police by issuing six directives, four of which he challenges on this appeal, claiming violations of the provisions of either the city's Charter or its codified ordinances and asserting therefore these directives are contrary to law.
In her defense, the Safety Director filed a motion for summary judgment, contending that the city, in exercising its municipal home rule powers, adopted a charter establishing a chain of command vesting the ultimate authority over the Police Department in the Mayor, and derivatively in the Director of Public Safety. Specifically, she asserted that Brook Park Ordinance 141.05 was invalid, because it granted the City's Police Chief exclusive control over the stationing and transfer of officers in the Police Department and conflicted with the city Charter. She further urged that, even if the section were valid, her directives were lawful because they fell within the ambit of authority given to the Safety Director to prescribe general rules and regulations for the Police Department.
Dease filed a cross-motion for summary judgment, arguing that the questioned ordinance does not conflict with the provisions of the Charter and he requested the court to declare that the directives issued by the Safety Director contravened the provisions of Ordinance 141.05.
In its opinion, the trial court determined that section 141.05 of the Brook Park City ordinances purported to grant powers to a police department, while the Charter reserved such powers to a police division; the court held, therefore, that Ordinance 141.05 was invalid because it purportedly granted power to a mythical police department, not a police division, and because section 5.01 of Brook Park's Charter preempts any legislation that would assign to any office, department, or division any function or duty already assigned by the Charter to a particular office, department, or division. The court consequently granted summary judgment to the Safety Director, holding that Article VIII section 8.02 of the Charter empowered the Safety Director to make all necessary rules and regulations for the Division of Police and in conformity with that authority the Safety Director had issued the directives to the Chief of Police.
The Police Chief now appeals from the trial court's judgment, raising two assignments of error for our review, which we consider together because they concern the same issues of law. They state:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE APPELLEE ON APPELLANT'S COMPLAINT FOR DECLARATORY JUDGMENT, AND HOLDING THAT THE DIRECTOR OF PUBLIC SAFETY FOR THE CITY OF BROOK PARK HAD AUTHORITY, UNDER THE CHARTER AND CODIFIED ORDINANCES OF THE CITY OF BROOK PARK, TO ISSUE DIRECTIVES TO THE CHIEF OF POLICE AND TO UNIFORMED MEMBERS OF THE BROOK PARK POLICE DEPARTMENT WHICH CONSTITUTED THE STATIONING AND TRANSFER OF UNIFORMED OFFICERS.
 II. THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT TO APPELLANT ON HIS COMPLAINT FOR DECLARATORY JUDGMENT, AND HOLDING THAT, UNDER THE CHARTER AND CODIFIED ORDINANCES OF THE CITY OF BROOK PARK, THE CHIEF OF POLICE DOES NOT HAVE EXCLUSIVE CONTROL OVER THE STATIONING AND TRANSFER OF UNIFORMED PERSONNEL IN THE POLICE DEPARTMENT.
The Police Chief contends that the trial court erred and he urges that the court should have entered summary judgment in his favor and declared that, as Police Chief, he has exclusive control over the stationing and transfer of Brook Park police officers, and also should have declared that the Safety Director exceeded her authority in issuing the directives to him purporting to instruct him how to do his job.
The Safety Director, on the other hand, urges that the Ohio Constitution authorizes municipalities to exercise home rule in matters of local self-government, contending that when a municipality purports to exercise its home rule powers, the municipal charter prevails over state statutes and local ordinances. Specifically, she points to case law permitting municipalities to create and operate their own police departments without interference from the state. Moreover, she argues that sections 3.03 and 8.07 of the city's Charter establish a chain of command placing ultimate authority over the Police Department in the Mayor and the Safety Director. The Safety Director therefore asserts that, pursuant to the Charter, the Chief of Police must ultimately answer to the Safety Director, his authority being inherently subordinate to that of the Safety Director, which can only be exercised if consistent with the directives from the Safety Director.
The Safety Director maintains therefore that Ordinance 141.05, which gives exclusive control of the stationing and transfer power to the Police Chief, conflicts with the authority vested in the Mayor and the Safety Director by the Charter and is thus void. To support her contention, she also points to section 141.02 of the ordinances, which states that the Safety Director is the executive head of the Police Department and therefore authorizes her to issue the challenged directives. Finally, McNamara maintains that, even if section 141.05 is applicable, the directives were issued pursuant to her authority to prescribe rules and regulations for the division of police.
The central issue therefore presented for our review on this appeal concerns whether the trial court properly granted summary judgment to the Safety Director, finding Ordinance 141.05 to have no application to the Brook Park Police Department and holding that the Safety Director properly exercised her authority in issuing directives to the Chief of Police.
More specifically, we are asked by the Police Chief on this appeal to determine whether the Safety Director exceeded her authority when she issued a series of directives instructing the Police Chief to assign a specific officer to the K-9 unit; to prepare a schedule for lieutenants to be put on all regular shifts; to personally assist her with dispatch duties; and to personally handle certain clerical tasks.
Courts of appeal review determinations of summary judgment de novo. See Grafton v. Ohio Edison Co.(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is appropriate when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1976),54 Ohio St.2d 64, 66, 375 N.E.2d 46.
Because the facts of the case are not in dispute, we move from the fact side of this analysis to the law side, where we review the trial court's decision finding that the Safety Director is entitled to a judgment as a matter of law in this case. Our resolution of this case depends upon the meaning of the relevant provisions of the Charter of the City of Brook Park and the city ordinances regarding the respective powers and duties of the Safety Director and the Chief of Police.
We recognize that the Ohio Constitution vests upon municipalities the power to exercise home rules in matters of local self-government. See State, ex rel. Paluf v. Feneli (1994), 69 Ohio St.3d 138, 141. We further recognize that charter provisions and municipal ordinances relating to the organization and administration of municipal police departments are proper exercises of local self-government power. State, ex rel. Canada v. Philips (1958), 168 Ohio St. 191. It is also undisputed that where a municipal ordinance conflicts with a municipal charter provision, the charter provision prevails. State, ex rel. Krieger v. City of Broadview Heights (1984), 11 Ohio St.3d 139.
This case, however, does not turn on whether the operation of the police department is within the scope of municipal home rule power emanating from the Charter, as the Safety Director urges. The Safety Director's home rule argument is not persuasive, because, as we explain below, Brook Park has not adopted any specific Charter provisions which vest control over the police department in the Mayor and the Safety Director, to the exclusion of the Police Chief. Rather, as we explain below, the Charter sets up dual control over the Police Department in the Safety Director and the Chief of Police.
Nor does this case turn on whether an ordinance may conflict with a charter provision, because, as we also explain below, our review of the pertinent charter sections and ordinances do not indicate irreconcilable conflict among these provisions.
Rather, the disposition of this case is dependent upon a reasonable construction of the plain meaning of the provisions of the Brook Park Charter and the applicable city ordinances, in particular, Ordinances 141.02 and 141.05. We review the pertinent charter provisions first.
 The Charter Provisions.
The principal charter sections which form the basis of controversy are located in Article VIII, Sections 8.02, styled Duties of the Directors, and Section 8.05, styled Division of Police. They read in pertinent part as follows:
 Section 8.02 DUTIES OF THE DIRECTOR The Director of Public Safety shall make all necessary rules and regulations for the government of the Department and the divisions thereof. (Emphasis added.)
 Section 8.05 DIVISION OF POLICE. The Division of Police shall be in active charge of a Chief. * * * There shall be established a Detective Bureau and a Juvenile Bureau within the Division of Police. Any other bureau deemed necessary to increase efficiency, and/or protection may be established within the Division of Police.
 The operation of such bureau or bureaus shall be by personnel of the Division of Police.
 The Chief of Police shall be responsible for their organization and supervision.
In addition to these sections, we are also aware that Article III Section 3.03 provides that the Mayor, as chief executive officer of the city, has the power to supervise the administration of the city's affairs, and shall exercise control over all departments and divisions. Furthermore, we note that Section 8.07 of the Charter provides that the Safety Director shall have exclusive right to demote, suspend, or remove any officer in charge of a Division within the Department of Public Safety * * *.
The Safety Director urges that a fair reading of Section 8.02 coupled with the provisions in Section 3.03 and 8.07 leads to the inevitable conclusion that the Chief of Police is a subordinate of the Safety Director. The first issue for resolution is then whether Charter sections3.03, 8.07, and 8.02 give complete authority over the Police Department to the Mayor and the Safety Director.
When construing statues, a court must harmonize and give full application to all such [relevant] statutes unless they are irreconcilable and in hopeless conflict. Johnson's Markets, Inc. v. New Carlisle Dept. Of Health (1991), 58 Ohio St.3d 28, 35. A court must give such a reasonable construction as to give the proper force and effect to each and all such statutes relating to the same subject matter. Id. It is also a well-established principle of statutory construction that specific statutory provisions prevail over conflicting general statutes. See R.C.1.51 and Schisler v. Clausing (1981), 66 Ohio St.2d 345, 347. See also, Johnson's Markets, 58 Ohio St.3d at 36. Furthermore, we are mindful of R.C. 1.47, which provides,
In enacting a statute, it is presumed that:
* * *
(B) The entire statute is intended to be effective;
(C) A just and reasonable result is intended;
(D) A result feasible of execution is intended.
Reading all pertinent sections harmoniously and considering that specific provisions prevail over general provisions, and that a just result feasible of execution is intended, we recognize that the Charter of the City of Brook Park establishes dual control over the police department: the rule-making authority over the police Department is given to the Safety Director while the active charge authority over the police department is given to the Police Chief. Specifically, the Charter authorizes the Safety Director to make necessary rules and regulations for the government of the Police Department, which is separate from the authority to maintain active charge of the Police Department, including organization and supervisionof the bureaus within the Department, which is given to the Chief of Police.
The Mayor's power to supervise the administration of the city's affairs and control over all city departments and divisions is consistent with the distribution of power set forth in sections 8.02 and 8.05, as is the Safety Director's disciplinary power over the Police Chief set forth in section 8.07.
Accordingly, in this opinion we shall consider the bifurcation of authority over the Police Department as it relates to the facts of this case.
 The Ordinances.
Next, the Safety Director contends that the provisions of the Charter which authorize the Safety Director to make all necessary rules and regulations for the Police Department override the language of Brook Park Ordinance 141.05, which purports to empower the Chief of Police. The trial court found that Ordinance 141.05 does not apply to this case because it perceived a difference between a mythical police department created by and referred to in city ordinances, and a police division created by the city Charter.
The issue, then, concerns whether a conflict exists between the provisions of the Charter and those of the ordinances and if so, which control.
After reviewing the relevant sections of the Charter and the ordinances, and mindful of R.C. 1.47 which states, inter alia, that in enacting statutes, a reasonable result is intended, we conclude that the trial court afforded undue significance to the variation in terminology used in the Charter and ordinances. The drafters of the Brook Park Codified Ordinances could not have intended to create, by referring to a police department rather than a police division, a governmental unit with power and responsibilities that its Charter had reserved for a different city unit. The terminological variation is insignificant, unintended, and we have concluded that the police department referred to in the ordinances and the police division referred to in the Charter designate the same entity. See also R.C. 1.47.
Ordinance 141.05, which adopts language used in R.C. 737.05 and 737.06, reads as follows:
141.05 CONTROL.
 The Director of Public Safety shall have the exclusive management and control of all other officers, surgeons, secretaries, clerks and employees in the Police Department as provided by ordinance or resolution. * * * (ORC 737.05)
 The Police Chief shall have exclusive control of the stationing and transfer of all patrolmen, auxiliary police officers, and other officers and employees in the Police Department, and police auxiliary unit, under such general rules and regulations as the Director of Public Safety prescribes. (ORC 737.06) (Emphasis added.)
Ordinance 141.05 can be read harmoniously with the Charter: consistent with the bifurcated distribution of authority set forth in sections 8.02 and 8.05 of the Charter, this ordinance provides specifically that the Police Chief has exclusive control of the stationing and transfer of patrolman, auxiliary police officers, and other officers and employees in the department while it gives the Safety Director exclusive management and control over all other officers, surgeons, secretaries, clerks and employees in the Police Department. The Police Chief's exclusive control over the stationing and transfer of police officers and employees is consistent with the active charge authority granted to the Police Chief by the Charter. Also consistent with the Charter, Ordinance 141.05 provides that the Police Chief's stationing and transfer authority is subject to the general rules and regulations prescribed by the Safety Director.
Having determined that Ordinance 141.05 does not contravene the Charter, we turn now to Ordinance 141.02, which also relates to control over the police department. Ordinance 141.02 states:
141.02 COMPOSITION; EXECUTIVE HEAD.
* * *
 (b) There is hereby established within the Police Department one Police Chief * * *. Such officers shall be appointed by the Director of Public Safety * * *.
 (c) Under the direction of the Mayor, the Director of Public Safety shall be the executive head of the Police Department. He shall have all powers and duties connected with and incident to the appointment, regulation and government of such Department, except as otherwise provided by law. (Emphasis added.)
The Safety Director additionally argues that this ordinance unequivocally provides in subsection (c) that the Safety Director is the executive head of the Police Department, entrusted with the broad right to regulate and govern the department affairs. The third issue for our determination is then whether this section distributes the power over the Police Department in a manner inconsistent with Ordinance 141.05.
We recognize that this ordinance designates the Safety Director as executive head of the Police Department, but we note that this designation is limited by the qualifying language, except as otherwise provided by law. Striving to read Ordinances 141.02 and 141.05 harmoniously, to give effect to the entire ordinance, and to reach a just and reasonable result, as we are required to do by Johnson's Markets and R.C. 1.47, we have determined that the Safety Director's appointment, regulation and government power over the Police Department is limited by the Police Chief's stationing and transfer authority over officers and employees in the Police Department, which the city council provided in Ordinance 141.05. The specific grant of authority to the Police Chief together with the express limitation on the power of the Safety Director, except as otherwise provided by law, limits the authority of the Safety Director. We conclude therefore that the power allocated to the Safety Director in Ordinance 141.02 is qualified by the Police Chief's exclusive control of stationing and transfer of Police Department officers and employees.
 The Challenged Directives
Having determined that the Police Chief has exclusive control of the stationing and transfer of police officers, we now review the four directives challenged on appeal by the Police Chief and consider whether they fall within the Safety Director's rules and regulations power, as McNamara urges, or within the Police Chief's stationing and transfer authority, as Dease maintains.
The first interoffice memo from the Safety Director to the Chief of Police, dated September 16, 1999, concerned the assignment of Officer Jim Wagner to the K-9 unit. The assignment of a police officer to the K-9 program is not part of the rules and regulations authority given to the Safety Director; rather, it is part of the stationing and transfer power granted exclusively to the Chief of Police by Ordinance 141.05. See, Novak v. Perk (1980), 64 Ohio St.2d 43, 45 (interpreting a municipal charter provision providing for the fire chief's exclusive control of stationing and transfer of all firemen and other officers, the court states that this language clearly gives the fire chief exclusive authority over individual assignments of fire department personnel.) Therefore, this directive is beyond the scope of power granted to the Safety Director by the Charter or ordinances of the City of Brook Park.
The second challenged directive involves a memorandum from the Safety Director to the Police Chief instructing him to schedule lieutenants to supervisory duties on all regular shifts. Stationing of officers is part of the stationing and transfer authority entrusted exclusively to the Police Chief under the specific authority delegated by Ordinance 141.05 to divide exclusive control of the Chief of Police. And, as we have clarified, the bifurcated nature of the control of the Brook Park Police Department devolves upon the Chief, the ability to station all of ficers and this would include lieutenants. The Safety Director does have management and control authority over surgeons, secretaries and clerks, but not police officers, because the ordinance specifically granted exclusive control of the stationing and transfer to the Chief of Police. Accordingly, the Safety Director exceeded her authority in issuing this directive.
Lastly, the Chief of Police contested two directives ordering him to personally assist the Safety Director with certain dispatch and clerical duties. The Safety Director, however, urges that she, as Dease's supervisor, has the authority to direct any subordinate to perform specific duties. These two directives, however, involve the stationing of the Police Chief himself, a power vested only in the Chief, because Ordinance 141.05 states, in pertinent part, [t]he Police Chief shall have exclusive control of the stationing and transfer of all * * * other officers * * * in the Police Department * * *. The Police Chief, himself an officer, has therefore exclusive control over his stationing. Accordingly, these two directives purporting to station the Chief into clerical duties exceeded the Safety Director's authority.
Based on our review of this case and the applicable law, we have concluded that Section 8.05 of the Charter of the City of Brook Park places the Police Chief in active charge of the Police Department, responsible for the organization and supervision of the bureaus within the Police Department. We have further concluded that the Safety Director, in accordance with Section 8.02 of the Charter, has the authority to make necessary rules and regulations for the Police Department.
In addition, we have concluded that in accordance with R.C. 1.47, in enacting ordinances, a just and reasonable result feasible of execution is intended. Accordingly, we reject the mythical police department argument analysis offered by the trial court and instead have concluded that Ordinance Nos. 141.02 and 141.05 can be read in harmony with the Charter of the City of Brook Park, vesting the exclusive authority to station and transfer officers with the Chief of Police and vesting the authority as executive head of the Department with the Safety Director.
Finally, to the extent that the directives issued by the Safety Director conflict with the right of the Police Chief to exercise exclusive control over the stationing and transfer of police department officers and employees, those directives are contrary to law. In this instance, the Safety Director's September 16, 1999 Memorandum to the Police Chief purporting to assign Officer Jim Wagner to the K-9 Unit, her September 24, 1999 Memorandum instructing the Chief to station lieutenants on regular shifts, and her January 10 and January 13, 2000 Memorandums ordering the Police Chief to personally handle clerical duties including filing records and inputting data on the CAD system, transcend her authority to prescribe general rules and regulations for the Police Department and conflict with the express delegation of authority for the stationing and transfer of officers given exclusively to the Police Chief, and are therefore void and of no legal effect.
Accordingly, the judgment of the trial court granting summary judgment to the Safety Director and denying summary judgment to the Police Chief is reversed; pursuant to App.R. 12(B), summary judgment is rendered in favor of the Chief of Police.
All future directives issued by the Safety Director should be consistent with this opinion, the laws of the Sate of Ohio, and the Charter and Ordinances of the City of Brook Park, and cannot interfere with the authority of the Police Chief to exercise exclusive control of the stationing and transfer of all patrolmen, auxiliary police officers, and other officers and employees in the Police Department, and police auxiliary unit.
The request for attorney fees is denied.
Judgment accordingly.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR. CONCURS; DIANE KARPINSKI, ADM. J. CONCURS AND DISSENTS, (See Concurring and Dissenting Opinion attached.)