[Cite as *In re Jastrzebski*, 2010-Ohio-2373.]

# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: ELIZABETH L. JASTRZEBSKI

ELIZABETH L. JASTRZEBSKI

       Applicant

Case No. V2009-40188

Commissioners:
Karl C. Kerschner, Presiding
Randi M. Ostry
Lloyd Pierre-Louis

## ORDER OF A THREE-COMMISSIONER PANEL

{¶ 1} On May 6, 2008, the applicant, Elizabeth Jastrzebski, filed a compensation application as the result of an assault which occurred on April 8, 2007. On October 29, 2008, the Attorney General issued a finding of fact and decision finding the applicant met the necessary jurisdictional requirements to receive an award of reparations. Hence, the applicant was granted an award in the amount of $335.81, of which $96.00 represents payment to Debra K. Goran, Ph.D., $15.00 represents reimbursement to the applicant for a payment to the Cleveland Clinic, and $224.81 represents mileage expenses incurred by the applicant. The Attorney General noted that 80 percent of the counseling expenses incurred with Dr. Goran was related to the criminally injurious conduct, while the remaining 20 percent was not. The Attorney General directed the applicant to file a compensation application on behalf of her minor son A.B. to address his counseling expenses. The Attorney General determined expenses incurred at South West General Health Center are subject to the Hospital Care Assurance Program (HCAP). Therefore, HCAP would reimburse these expenses. The applicant was unable to prove she incurred work loss as a result of the

criminally injurious conduct and her claim for replacement services loss was denied since the child care expenses she was seeking do not meet the legal definition of replacement services loss.

{¶ 2} On November 24, 2008, the applicant submitted a request for reconsideration. The applicant asserted she incurred work loss on September 13, 2007, October 15, 2007, October 16, 2007, November 19, 2007, November 20, 2007, January 15, 2008, April 1, 2008 and May 2, 2008, and this loss should be reimbursed by the compensation program. The applicant also requested mileage reimbursement to attend meetings with relevant parties concerning the domestic violence she suffered. The applicant also indicated that her husband's insurance carrier refused to reimburse the expenses incurred with Dr. Goran because Dr. Goran was not within the insurance carrier's network. The applicant requested reimbursement of a $50.00 co-payment she incurred for treatment at South West. Finally, the applicant asserted she may not qualify for HCAP since she and her husband are, or were at the time, still married and their joint income would be considered.

{¶ 3} On February 23, 2009, the Attorney General rendered a Final Decision. The Attorney General granted the applicant an additional award in the amount of $50.00, which represented reimbursement of the co-payment she incurred at South West General Health Center. With respect to the additional issues raised by the applicant, the Attorney General found no reason to modify its prior decision. On March 2, 2009, the applicant filed a notice of appeal from the February 23, 2009 Final Decision of the Attorney General. Hence, a hearing was held before this panel of commissioners on February 3, 2010 at 10:25 A.M. It should be noted that this hearing concerned both V2009-40188 and V2009-40781, however, this decision will only address the issues raised in V2009-40188.

{¶ 4} The applicant and her attorney, Kimberley Wells, appeared at the hearing while the state of Ohio was represented by Assistant Attorneys General Lyndsay Nash and Amy O'Grady. As a preliminary matter, it was disclosed to the parties that

Commissioner Ostry was associated with a firm for whom attorney Wells had, in the past, performed contract work.   Neither party expressed any objection to Commissioner Ostry hearing this matter.

{¶ 5}   Initially, the parties agreed that the applicant should be compensated for her counseling expenses and the related mileage expenses she incurred to attend these sessions.   Also, the applicant should be compensated for the work loss she incurred to meet with law enforcement.   These expenses have been paid by the Attorney General.

{¶ 6}   With respect to V2009-40188, the case at bar, the issues that were addressed were work loss incurred on October 7, 2007 to meet with law enforcement, lost wages to attend the custody hearing, and child care expenses which qualify as replacement services loss.

{¶ 7}   Elizabeth Jastrzebski was called to testify.   She described the history of domestic violence she experienced with her husband.   She revealed that she filed for divorce on May 16, 2007.   Initially her husband was granted supervised visitation with his children.   However, after approximately three months, he was allowed unsupervised visitation.   On October 15, 2007, Darlene Wilcox was appointed guardian ad litem.

{¶ 8}   The applicant testified she began working in August 2007 as a substitute teacher.   Currently, she works as a substitute teacher during the day, works at a ski-resort seasonally, and at McDonald's on the weekends.   Prior to this time period, she took care of her children on a full time basis.   She now has to pay for before-school childcare.

{¶ 9}   The applicant was then shown Exhibit 2, a list of the days of work she missed.   The exhibit was prepared by the applicant.   The applicant testified that she was off work on September 13, 2007 to meet with conciliatory services; that October 15, 2007 was the day after her husband did not return A.B. as scheduled and that she stayed home from work because she was worried; that on October 16, 2007, she met with the guardian ad litem, Darlene Wilcox; that November 19 and 20, 2007, were court

dates for visitation and grandparent visitations; January 15, 2008 was another court appearance; that on April 1, 2008, a court hearing was postponed due to illness of her husband but she had already called off work; and that May 2, 2008, was the final court date where she was awarded custody of A.B. and was named residential parent.

{¶ 10} The applicant was then shown Exhibit 1, the final divorce decree from the Cuyahoga County Common Pleas Court, Division of Domestic Relations. The applicant's attention was directed to page 2 of the document where the court named the applicant as the residential parent and legal custodian of A.B. The applicant indicated that she had to attend a mandatory parenting class.

{¶ 11} The applicant was presented with Exhibit 3, a certificate of attendance from a Parent Education Seminar dated June 26, 2007. The applicant's attention was then directed back to Exhibit 2. The applicant testified that she had to travel to the October 16, 2007 meeting with the guardian ad litem and the September 13, 2007, January 15, 2008 and May 2, 2008, court dates required her to incur travel expenses. She testified she traveled to both the Parma and the North Royalton Police Departments to file police reports when A.B. was not returned from visitation on October 15, 2008.

{¶ 12} The applicant reiterated that although she is the residential parent and has custody of A.B., her former husband has visitation rights. While she attempted to terminate visitation rights, she was unsuccessful.

{¶ 13} Assistant Attorney General Amy O'Grady cross-examined the applicant. The applicant revealed that initially after the offender was charged with domestic violence a Temporary Protection Order (TPO) was issued. During the time the TPO was enforced no visitation was allowed; however, visitation was subsequently granted. The applicant related that Family Conciliatory Services was associated with the Division of Domestic Relations of the Court of Common Pleas of Cuyahoga County. During this time period A.B. did not suffer any verbal or physical abuse by his father.

{¶ 14} The applicant testified that the dates listed in Exhibit 2 represent all the times she attended court hearings regarding the custody of A.B.

{¶ 15} On redirect the applicant testified that she went to court many other times concerning the divorce matter but is not seeking reimbursement for those expenses. Whereupon, the testimony of the applicant was concluded and the applicant moved for admission of Exhibits 1, 2, and 3. The Attorney General moved to admit a letter dated February 28, 2008 from Darlene Wilcox and a letter dated October 1, 2007 from Freda Saleem of Family Conciliation Services.

{¶ 16} The applicant asserts the mileage expense incurred in October 2007, to file a police report concerning her husband's interference with custody, should be compensable  because it was incurred pursuant to her obligation to report criminal conduct. Furthermore, the applicant contends that expenses she incurred for mileage and lost wages to attend custody proceedings. However, the applicant does not seek reimbursement of attorney fees incurred as the result of the custody proceedings should be compensable. The applicant argues these expenses were incurred due to her attempts to protect her child from the offender. The applicant also requests work loss and mileage expenses incurred when she met with Freda Saleem of Family Conciliation Services, and Darlene Wilcox, the guardian ad litem, for the same reason, to protect the interests of her child. The applicant concedes that pursuant to R.C. 2743.51(F)(4), attorney fees are not compensable for representation in custody proceedings, however, R.C. 2743.51(F)(4) does not address the issue of lost wages and mileage expenses and therefore should have no applicability in this situation.

{¶ 17} Finally, the applicant argues she should be granted an award for replacement services loss. The applicant contends that due to her divorce from the offender and the court awarding her custody of her minor child A.B., she had to seek full time employment. Therefore, any child care costs she incurred should be considered a replacement services loss.

{¶ 18} The Attorney General reasons that any decision rendered by this panel must take into consideration the change in the statute based upon the enactment of R.C. 2743.51(F)(4). Prior case law had recognized the compensability of attorney fees for limitations of visitation, custody proceedings resulting in less than full physical separation, and guardian ad litem fees. However, with the addition of R.C. 2743.51(F)(4), it was the General Assembly's intent to specifically delineate the scope of the compensability of attorney fees as an allowable expense. In doing so, the General Assembly wanted to ensure that funds be expended only when there was a physical separation of the victim from the offender. The applicant's argument seeks to circumvent the intent of the legislature by requesting reimbursement for mileage expense and work loss, when the underlying proceeding, in this case a custody order which did not physically separate the victim from the offender, failed to meet the specific requirements of R.C. 2743.51(F)(4). The Attorney General also claims that the applicant's claims for work loss and mileage as it relates to meeting with Family Conciliation Services and the guardian ad litem, attending parenting classes and doing whatever is in the best interest of the child occur in the vast majority of divorces involving children. Certainly, the reparations fund should not be burdened with reimbursing these expenses, since they are not directly related to the criminally injurious conduct.

{¶ 19} Finally, the expenses involved in obtaining a police report for an interference of custody matter should not be compensated since no testimony was presented that this report was made as a result of A.B. suffering from any criminally injurious conduct.

{¶ 20} The Attorney General concluded by stating that the applicant failed to meet the definition of replacement services loss as contained in the statute. Pursuant to R.C. 2743.51(H), replacement services loss can be granted only when the injured person is unable to perform ordinary and necessary services. In this case, the applicant offered no testimony supporting the replacement services she seeks were the

result of injuries she sustained from the criminally injurious conduct. Accordingly, the day care expenses requested by the applicant should be denied.

{¶ 21} The applicant responded to the Attorney General's arguments by citing the case of *In re Richardson*, V94-31959sc (1-30-95), affirmed tc (7-28-95), affirmed jud (1-10-96), for the proposition that she incurred replacement services loss. The applicant contends this case stands for the proposition that replacement services loss can be awarded to one who has not been injured, but who incurs a loss to replace the services of the injured person. Whereupon, the hearing was concluded.

{¶ 22} R.C. 2743.51(F)(1) in pertinent part states:

"(F)(1) 'Allowable expense' means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, rehabilitation, rehabilitative occupational training, and other remedial treatment and care and including replacement costs for eyeglasses and other corrective lenses."

{¶ 23} R.C. 2743.51(F)(4) in pertinent part states:

"(4) 'Allowable expense' includes attorney's fees not exceeding one thousand three hundred twenty dollars, at a rate not exceeding sixty dollars per hour, incurred to successfully obtain a restraining order, custody order, or other order to physically separate a victim from an offender * * *"

{¶ 24} R.C. 2743.51(G) states:

"(G) 'Work loss' means loss of income from work that the injured person would have performed if the person had not been injured and expenses reasonably incurred by the person to obtain services in lieu of those the person would have performed for income, reduced by any income from substitute work actually performed by the person, or by income the person would have earned in available appropriate substitute work that the person was capable of performing but unreasonably failed to undertake."

{¶ 25} R.C. 2743.51(H) states:

"(H) 'Replacement services loss' means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the injured person would have performed, not for income, but for the benefit of the person's self or family, if the person had not been injured."

{¶ 26} From review of the case file and upon full and careful consideration of the testimony and arguments presented by the parties, we find that applicant should be granted counseling and mileage expenses related to the counseling sessions in accordance with the agreement of the parties.

{¶ 27} This panel believes that all statutory sections relating to the same general subject matter must be read *in pari materia*.　When reading statutes *in pari materia*, this panel must give reasonable construction as to the proper force and effect each statutory provision has on the other and the interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections.　*Johnson's Market Inc. v. New Carlisle Dept. Of Health* (1991), 58 Ohio St. 3d 28; see also *In re Fletcher*, V2006-20836jud (7-2-09).　Accordingly, when we read R.C. 2743.51(F), we must harmonize the particular section of the statute to give proper force and effect to the intent of the General Assembly.　Accordingly, we find when the General Assembly amended R.C. 2743.51 on June 26, 2004 by including R.C. 2743.51(F)(4), it intended to limit the compensability of attorney fees, as an allowable expense, only to those situations where a successful restraining order, custody order, or other order physically separated a victim from an offender.　Accordingly, we find applicant's argument that mileage and work loss expenses in conjunction with trips to custody hearings, Family Conciliation Services, parenting classes, and guardian ad litem meetings (where no physical separation was ordered), should be compensable, but attorney fees incurred for the same custody proceedings are not compensable is an incongruous interpretation of the statute.　If the General Assembly chose to limit the reimbursement of attorney fees to those situations only　where the victim and the offender were physically separated, we would be remiss in granting R.C. 2743.51(F)(1) expenses *e.g.* mileage

and work loss, when that requirement is not met. Therefore, we find the applicant's claims for mileage and work loss relating to visits to Family Conciliation Services, the guardian ad litem, and attendance at custody proceedings and parenting classes are denied.

{¶ 28} The applicant asserts a claim for work loss and mileage expense reimbursement for reporting a custody interference charge to law enforcement. While the applicant correctly cites the claim of *In re T.R.G.*, for the proposition that work loss incurred to take a minor victim to meet with law enforcement is compensable, this is not the situation in this case. In the case at bar, the applicant asserts she incurred work loss and mileage expenses to meet with law enforcement to pursue an interference with custody matter. However, this situation is distinguishable from the holding in *In re T.R.G.* In *In re T.R.G.*, the work loss was compensable since the applicant took time off of work to report the criminally injurious conduct that was the basis for filing the compensation application. In the case at bar, the underlying criminally injurious conduct toward A.B. was domestic violence, not any events that transpired in October 2007. No documentary or testimonial evidence has been presented that A.B. was a victim of criminally injurious conduct in October 2007. Therefore, the applicant's claim for mileage and work loss to meet with law enforcement concerning the interference with custody matter is denied.

{¶ 29} Finally, the applicant maintains the holding in *In re Richardson*, V94-31959sc (1-30-95), affirmed tc (7-28-95), affirmed jud (1-10-96), stands for the proposition that the applicant can receive an award for replacement services loss due to the fact she incurred daycare expenses while she was working. The applicant reasoned that but for the domestic violence which resulted in her divorce, she would have remained a stay-at-home parent and would not have sought full-time employment. However, due to the divorce and the divorce decree granting her request to be the custodial parent of A.B., she was required to seek full-time employment and thus incur daycare expenses when she was not able to care for A.B. While the Attorney General

correctly notes that R.C. 2743.51(H) requires replacement services loss to be limited to the injured party's loss, the applicant contends *Richardson* provides an exception.

{¶ 30} *Richardson* presents a unique situation where the applicant's husband acted as a caregiver for their child, while the applicant was working. The applicant was assaulted. As a result of the assault, the applicant's husband accompanied the applicant to work to assist the applicant with fears she was experiencing and to protect her from another assault. In other words, the applicant would not have been able to return to work on her own unless she was accompanied by her husband. Therefore, the loss experienced by the husband altering his work schedule was less than if the applicant had quit her job due to her fears. Therefore, this court determined it was reasonable under those circumstances to pay for replacement services loss. Furthermore, the award was granted to the applicant, not to the applicant's husband.

{¶ 31} In the case at bar, the applicant is not asserting that the daycare expenses are incurred for A.B.'s protection from or fear of the offender. The divorce decree mandates that the offender have unsupervised visitations with A.B. The applicant has presented no information to this panel that A.B. is afraid of his father or that the sole purpose of daycare is to protect A.B. from his father. The applicant sought employment to show the domestic relations court that she had the ability to financially support her child and was qualified as the custodial parent. We find the causal connection between the criminally injurious conduct suffered by A.B., and the daycare expenses is too remote and tenuous, and accordingly, the applicant's claim for replacement services loss is denied.

{¶ 32} Therefore, the February 23, 2009 decision of the Attorney General is modified.

IT IS THEREFORE ORDERED THAT

{¶ 33} 1)    Applicant's Exhibits 1, 2, and 3 are admitted into evidence;

{¶ 34} 2) The letters submitted by the Attorney General, dated February 28, 2008, from Darlene Wilcox, guardian ad litem and dated October 1, 2007, from Freda Saleem of Family Conciliation Services are admitted into evidence;

{¶ 35} 3) The February 23, 2009 decision of the Attorney General is MODIFIED to render judgment in favor of the applicant for counseling expenses and associated mileage expenses agreed to at the hearing;

{¶ 36} 4) This claim is remanded to the Attorney General for payment of these expenses;

{¶ 37} 5) Applicant's claims for mileage and work loss expenses associated with trips to Family Conciliation Services, the guardian ad litem, and law enforcement in October 2007 are DENIED;

{¶ 38} 6) Applicant's claim for replacement services loss is DENIED;

{¶ 39} 7) This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{¶ 40} 8) Costs are assumed by the court of claims victims of crime fund.

_____
KARL C. KERSCHNER
Presiding Commissioner


_____
RANDI M. OSTRY
Commissioner

_____
LLOYD PIERRE-LOUIS
Commissioner

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Cuyahoga County Prosecuting Attorney and to:

Filed 5-14-2010
Jr. Vol. 2275, Pgs. 97-109
To S.C. Reporter 5-27-2010