RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0392p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MONCLOVA CHRISTIAN ACADEMY; ST. JOHN'S JESUIT
HIGH SCHOOL & ACADEMY; EMMANUEL CHRISTIAN
SCHOOL; CITIZENS FOR COMMUNITY VALUES dba Ohio
Christian Education Network,

> *Plaintiffs-Appellants*,

    *v.*

TOLEDO-LUCAS COUNTY HEALTH DEPARTMENT,

> *Defendant-Appellee*.

No. 20-4300

---

On Motion for Preliminary Injunction Pending Appeal.
United States District Court for the Northern District of Ohio at Toledo;
No. 3:20-cv-02720—Jeffrey James Helmick, District Judge.

Decided and Filed:  December 31, 2020

Before:  KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

---

### COUNSEL

**ON MOTION AND REPLY:**  Michael A. Roberts, Brian W. Fox, GRAYDON HEAD &
RITCHEY LLP, Cincinnati, Ohio, for Appellants.  **ON RESPONSE:**  Kevin A. Pituch, John A.
Borell, Evy M. Jarrett, LUCAS COUNTY PROSECUTOR'S OFFICE, Toledo, Ohio, for
Appellee.  **ON BRIEF:**  Benjamin M. Flowers, OFFICE OF THE OHIO ATTORNEY
GENERAL, Columbus, Ohio, for Amicus Curiae.

---

### ORDER

---

On November 25, 2020, the defendant in this case, the Toledo-Lucas County Health

Department, issued a resolution closing every school in the county—public, private, and more to

the point here, parochial—for grades 7-12, effective December 4.  The shutdown's purpose was to slow the spread of COVID-19.  Yet—in the same county—gyms, tanning salons, office buildings, and a large casino have remained open.  The plaintiffs here are nine Christian schools (three suing in their own names, another six as part of a coalition) who argue that the closure of their schools, when measured against the more favorable treatment afforded these secular actors, amounts to a prohibition of religious exercise in violation of the First Amendment.  The district court denied the plaintiffs' motion to enjoin the resolution as applied to their schools, reasoning that it was a neutral law of general application, as defined by the Supreme Court's precedents.  We respectfully disagree with that determination and grant the plaintiffs' motion for an injunction pending appeal.

By way of background, nobody disputes that, before the December 4 shutdown, the plaintiff schools employed "strict social distancing and hygiene standards," which included the use of "thermal temperature scanners" and plexiglass dividers, along with spacing desks at least six feet apart and a mandate that everyone wear masks at all times.  Complaint ¶¶ 16, 31-34, 43-45, 55-60.  Moreover, as the Department itself stated in its resolution closing the schools, "little in-school transmission has been documented."  But the Department closed all the schools in its jurisdiction anyway, on the ground that "[c]ommunity spread conditions continue to worsen in Lucas County[.]"  Specifically, the Department issued Resolution No. 2020.11.189, which ordered every school in the county, "for Grades 7-12 (or 9 to 12 depending on school configuration)[,]" to close from December 4, 2020 to "January 11, 2021 at 8:00 am."

Plaintiffs brought this suit on December 7.  A week later, the district court denied the plaintiffs' motion for a temporary restraining order.  On December 16, the district court denied the plaintiffs' motion for a preliminary injunction.  The plaintiffs then brought this appeal, which the Ohio Attorney General supports as amicus curiae.  We have jurisdiction under 28 U.S.C. § 1292(a)(1).

We consider four factors when deciding whether to grant an injunction pending appeal: (1) whether the applicant is likely to succeed on the merits of the appeal; (2) whether the applicant will be irreparably harmed absent the injunction; (3) whether the injunction will injure the other parties; and (4) whether the public interest favors an injunction.  *Roberts v. Neace*,

958 F.3d 409, 413 (6th Cir. 2020) (per curiam).  Here, we agree with the district court that the dispositive issue is legal, namely whether the Resolution violates the plaintiffs' First Amendment right of free exercise of religion.  We review the district court's decision on that issue de novo.

"The Free Exercise Clause protects religious observers against unequal treatment[.]" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993) (internal quotation marks and alteration omitted).  To that end, a "law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny."  *Id*. at 546. Here, the Department suggests that the Resolution's closure of the plaintiffs' schools does not burden their religious practice at all, because the Resolution provides that "[s]chools may open to hold religious educational classes or religious ceremonies."  That proviso is evidence of the Resolution's neutrality, and indeed no one argues that the Department has targeted the plaintiffs' schools or acted with animus toward religion here.  But the plaintiffs argue that the exercise of their faith is not so neatly compartmentalized.  To the contrary, they say, their faith pervades each day of in-person schooling.  "Throughout each school day and class," for example, Monclova Christian Academy "makes every effort to point students to a dependency on Christ in every situation of life, whether that situation is intellectual or interpersonal."  Complaint ¶ 27. At St. John's Jesuit High School and Academy, to cite another example, "[m]ost class periods begin with prayer or prayer intentions," and "Catholic social teaching is interwoven into many secular subjects[.]"  *Id*. ¶ 40.  And the plaintiffs emphasize that "a communal in-person environment" is critical to the exercise of their faith.  Complaint ¶¶ 28, 38, 53.  We have no basis to second-guess these representations.  *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724-25 (2014).  The Department's closure of the plaintiffs' schools therefore burdens their religious practice.

Next comes whether the Resolution is "of general application."  *Lukumi*, 508 U.S. at 546. A rule of general application, in this sense, is one that restricts religious conduct the same way that "analogous non-religious conduct" is restricted.  *Id.*  That is why the Free Exercise Clause does not guarantee better treatment for religious actors than for secular ones; instead, the Clause "prohibits government officials from treating religious exercises worse than comparable secular

activities[.]" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 69 (2020) (Gorsuch, J. concurring).

Whether conduct is analogous (or "comparable") for purposes of this rule does not depend on whether the religious and secular conduct involve similar forms of activity. Instead, comparability is measured against the *interests* the State offers in support of its restrictions on conduct. Specifically, comparability depends on whether the secular conduct "endangers these interests in a similar or greater degree than" the religious conduct does. *Lukumi*, 508 U.S. at 543. In *Cuomo*, for example, the Court said that activities at "acupuncture facilities, camp grounds, garages," and retail stores were comparable to "attendance at houses of worship"—precisely because that secular conduct presented a "more serious health risk" than the religious conduct did. 141 S. Ct. at 66-67. Mitigation of that risk, of course, was the State's asserted interest in support of its restrictions on attendance at religious services; the State did not extend those restrictions to comparable secular conduct; and thus, the Court held, "the challenged restrictions" were not "of 'general applicability[.]'" *Id.* at 67 (quoting *Lukumi*, 508 U.S. at 546). It followed as a matter of course that the restrictions were invalid.

We therefore consider whether the Resolution here treats the plaintiffs' schools less favorably than it does "comparable secular facilities." *Cuomo*, 141 S. Ct at 66. As an initial matter, the Department suggests that, under our recent decision in *Kentucky ex. rel. Danville Christian Academy, Inc. v. Beshear*, 981 F.3d 505 (6th Cir. 2020), the only "secular facilities" we may consider for this purpose are other schools. That case, like this one, involved an order closing "all public and private schools" in the relevant jurisdiction. And we have no quarrel with the conclusion in *Beshear* that the order there—considered solely within its four corners—did not discriminate against Danville Christian Academy in violation of the Free Exercise Clause. *Id.* at 509. But our opinion there said nothing about the question that the plaintiffs present here: namely, whether an order closing public and parochial schools violates the Clause if it leaves *other* comparable secular actors less restricted than the closed parochial schools. Meanwhile, when Danville Christian Academy sought review of our decision in the Supreme Court, a majority of the justices denied review largely because of "the timing and the impending expiration" of the challenged order, and invited Danville to seek "a new preliminary injunction if

the Governor" renewed it; and two justices said that "[w]hether discrimination is spread across two orders or embodied in one makes no difference; the Constitution cannot be evaded merely by multiplying the decrees." *Danville Christian Academy, Inc. v. Beshear*, 2020 WL 7395433, at *1; *id.* at *2 (Gorsuch, J., dissenting). Respectfully, therefore, we will consider the broader question presented here.

That question is whether we may consider only the secular actors (namely, other schools) regulated by the specific provision here in determining whether the plaintiffs' schools are treated less favorably than comparable secular actors are. We find no support for that proposition in the relevant Supreme Court caselaw. The Free Exercise Clause, as noted above, "protects religious observers against unequal treatment[.]" *Lukumi*, 508 U.S. at 542. That guarantee transcends the bounds between particular ordinances, statutes, and decrees. In *Lukumi* itself, for example, the Court said that "the four substantive ordinances [at issue] may be treated as a group for neutrality purposes." *Id.* at 540. True, the issue as to neutrality there was whether the City had targeted the plaintiff's practice of ritual animal sacrifice; but a similarly broad inquiry could just as easily reveal disparate treatment of religious and secular conduct for purposes of the "general application" inquiry. And the Court's test for identifying comparable secular conduct for purposes of that inquiry routinely identifies as comparable, as shown above, activities that are in other ways very different—attendance at church services and patronizing "acupuncture facilities[,]" for example. *Cuomo*, 141 S. Ct. at 66-67. Those activities might therefore be regulated by different statutes or decrees.

A myopic focus solely on the provision that regulates religious conduct would thus allow for easy evasion of the Free Exercise guarantee of equal treatment. That one order governed all the different conduct at issue in *Cuomo*, for example, was a mere fortuity. Suppose instead that the Governor in one order imposed a 25-person limit on larger facilities like houses of worship and "microelectronics" plants, and in another order allowed the very same "essential" businesses to "admit as many people as they wish." *Id.* The former order might impose uniform burdens so far as it went, but the Court's reasoning provides zero reason to think the case would have come out differently. Conversely—in *Employment Division v. Smith*, 494 U.S. 872 (1990)—suppose that, rather than ban the possession of "Schedule I" drugs across the board, Oregon law had

banned the possession of peyote but imposed no restrictions at all on the possession of other hallucinogenic drugs. Considered solely within its four corners, that provision would impose its burdens equally, because nobody could possess peyote. But viewed in the context of state law as a whole, the provision would bar members of the "Native American Church" from using peyote "for sacramental purposes[,]" *id.* at 874, while allowing secular actors to use comparable hallucinogenic drugs for recreational purposes. That "unequal treatment" would violate the Free Exercise Clause, assuming the peyote-only ban failed strict scrutiny. *Lukumi*, 508 U.S. at 542. The myopic approach would thus lead to results plainly contrary to the Court's caselaw. The relevant inquiry should therefore simply be whether the "government, in pursuit of legitimate interests," has imposed greater burdens on religious conduct than on analogous secular conduct. *Id.* at 543.

That inquiry leads directly to the conclusion that the Resolution's restrictions are not of "general applicability[.]" *Id.* at 546. In Lucas County, the plaintiffs' schools are closed, while gyms, tanning salons, office buildings, and the Hollywood Casino remain open. *Cuomo* makes clear that those secular facilities are "comparable" for purposes of spreading COVID-19. 141 S. Ct. at 66; *see also, e.g.*, *Roberts*, 958 F.3d at 414. The Resolution's restrictions therefore impose greater burdens on the plaintiffs' conduct than on secular conduct.

The Department offers one final argument to the contrary: that under Ohio law the Department lacks authority to close facilities other than schools. *See* Ohio Rev. Code § 3707.26. But the Department itself acknowledges that it is a "political subdivision" whose authority is delegated to it by the State. Indeed, under Ohio law the Department is a state agency that acts as an "administrative arm[] of the Ohio Department of Health." *Jonson's Markets, Inc. v. New Carlisle Dep't of Health*, 567 N.E.2d 1018, 1023-24 (Ohio 1991). And the Ohio Department of Health has chosen to leave open the secular facilities described above. Measured against the State's restrictions as a whole, therefore, the Resolution's restrictions are not of general application.

The Department's closure of plaintiffs' schools is thus subject to strict scrutiny. *Cuomo*, 141 S. Ct. at 67. The Department does not argue that its action can survive that scrutiny. Nor do we see any reason why it would. The closure of the plaintiffs' schools therefore violates their

rights under the Free Exercise Clause, which means they should succeed on the merits of their appeal. Finally, "[p]reliminary injunctions in constitutional cases often turn on likelihood of success on the merits, usually making it unnecessary to dwell on the remaining three factors." *Roberts*, 958 F.3d at 416. That is the situation here, again because the Department makes no argument that it should prevail in light of those factors. We will therefore grant the plaintiffs' motion.

\*     \*     \*

The plaintiffs' motion for an injunction pending appeal is granted. The Toledo-Lucas County Health Department is enjoined, during the pendency of this appeal, from enforcing Resolution No. 2020.11.189 or otherwise prohibiting in-person attendance at the plaintiffs' schools.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk