RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0111p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LIVINGSTON EDUCATIONAL SERVICE AGENCY; WAYNE-WESTLAND COMMUNITY SCHOOLS,

　　　　　　　　　　　*Plaintiffs-Appellants*,

　　*v.*

No. 22-1257

XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; JOOYEUN CHANG, in her official capacity as Assistant Secretary and Principal Deputy Assistant Secretary of the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; BERNADINE FUTRELL, in her official capacity as the Director of the Office of Head Start,

　　　　　　　　　　　*Defendants-Appellees*.

———————————

On Motion for Injunction Pending Appeal.
United States District Court for the Eastern District of Michigan at Detroit;
No. 2:22-cv-10127—Nancy G. Edmunds, District Judge.

Decided and Filed: May 20, 2022

Before: CLAY, ROGERS, and STRANCH, Circuit Judges.

———————————

## COUNSEL

**ON MOTION FOR INJUNCTION PENDING APPEAL AND REPLY:** Daniel R. Suhr, LIBERTY JUSTICE CENTER, Chicago, Illinois, Amy E. Murphy, Rebecca L. Strauss, MILLER JOHNSON, Grand Rapids, Michigan, for Appellants. **ON RESPONSE:** Alisa B. Klein, Sarah J. Clark, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

_____

**ORDER**

_____

This case concerns the COVID-19 vaccine mandate for Head Start program staff, contractors, and volunteers imposed by an interim final rule of the Department of Health and Human Services ("HHS").  *See* Vaccine and Mask Requirements To Mitigate the Spread of COVID-19 in Head Start Programs, 86 Fed. Reg. 68,052 (Nov. 30, 2021).  Head Start is a federal program that funds early childhood education for low-income children and provides other resources and education to the children's families.  *See* 42 U.S.C. § 9831.  Plaintiffs Livingston Educational Service Agency and Wayne-Westland Community Schools, both Head Start grantees in Michigan, brought suit to challenge the interim final rule under the Administrative Procedure Act, the Congressional Review Act, and several provisions of the United States Constitution.  The district court granted a temporary restraining order ("TRO") but later denied a preliminary injunction and dissolved the TRO.  Plaintiffs appeal the denial of their motion for a preliminary injunction.  At issue here is plaintiffs' motion for an injunction pending appeal.

The plaintiffs are not entitled to an injunction pending appeal because the plaintiffs have not shown that they will likely prevail on the merits, as the district court persuasively explained in its denial of the plaintiffs' motion for a preliminary injunction.  We adopt the reasoning of the district court in that respect.  *See Livingston Educ. Serv. Agency v. Becerra*, No. 22-CV-10127, 2022 WL 660793, at *4-8 (E.D. Mich. Mar. 4, 2022).

"We consider four factors when deciding whether to grant an injunction pending appeal: (1) whether the applicant is likely to succeed on the merits of the appeal; (2) whether the applicant will be irreparably harmed absent the injunction; (3) whether the injunction will injure the other parties; and (4) whether the public interest favors an injunction.*" Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 479 (6th Cir. 2020).  In their motion for an injunction pending appeal, the plaintiffs argue that they are likely to prevail on the merits for two reasons: first, because HHS violated the Administrative Procedure Act when it issued the vaccine requirement through an interim final rule instead of through notice-and-comment

rulemaking, and second, because HHS does not have the statutory authority to enact a vaccine requirement.

First, HHS likely did not violate the Administrative Procedure Act when it promulgated the vaccine requirement through an interim final rule instead of notice-and-comment rulemaking. HHS may use an interim final rule instead of notice-and-comment rulemaking "when the agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). The Supreme Court recently addressed this issue in *Biden v. Missouri* and held that the Secretary of HHS was not required to use notice-and-comment rulemaking to issue a vaccine requirement for the staff of Medicare and Medicaid facilities. *See* 142 S. Ct. 647, 654 (2022) (per curiam). The Court concluded that "the Secretary's finding that accelerated promulgation of the rule in advance of the winter flu season would significantly reduce COVID–19 infections, hospitalizations, and deaths . . . constitutes the 'something specific' . . . required to forgo notice and comment." *Id*. Similarly, in this case the Secretary made a specific finding that "[t]he Delta variant, which in the summer of 2021 became the predominant SARS-CoV-2 strain in the United States, is more contagious—spreading twice as fast—and results in more cases and hospitalizations for children." 86 Fed. Reg. at 68,055. The interim final rule also explained that "[Head Start staff] [b]eing fully vaccinated reduces risk of the transmission of SARS-COV-2 from staff to children who are not yet eligible for the vaccine and must be protected to minimize their exposure." *Id*. The interim final rule contains ample discussion of the evidence in support of a vaccine requirement and the Secretary's justifications for enacting the requirement. *See generally* 86 Fed. Reg. at 68,055-059. Given the similarity between the interim final rule at issue here and the rule that the Supreme Court upheld in *Missouri*, the plaintiffs are unlikely to prevail on their claim that the lack of notice-and-comment rulemaking violated the Administrative Procedure Act.

Second, HHS likely has the statutory authority to issue a vaccine requirement for Head Start program staff, contractors, and volunteers. The statute creating the Head Start program gives the Secretary of HHS the power to promulgate regulations to promote the health and well-being of the children in the program. The Head Start statute provides that the Secretary "shall modify, as necessary, program performance standards by regulation applicable to Head Start

agencies and programs," including designated standards and "such other standards as the Secretary finds to be appropriate." 42 U.S.C. § 9836a(a)(1)(A), (E). In addition to that broad grant of authority, the statute also specifically provides how the Secretary may remedy "health" risks to children in the program. A "deficiency" is defined as "a systemic or substantial material failure of an agency in an area of performance that the Secretary determines involves . . . a threat to the *health*, safety, or civil rights of children or staff[.]" 42 U.S.C. § 9832(2)(A)(i) (emphasis added). The statute gives the Secretary the power to remedy deficiencies, and in particular provides that "if the Secretary finds that the deficiency threatens the *health or safety* of staff or program participants," the Secretary must "require the agency . . . to correct the deficiency immediately[.]" 42 U.S.C. § 9836a(e)(1)(B)(i) (emphasis added). In *Missouri*, the Supreme Court held that similar statutory language permitted HHS to promulgate a vaccine requirement for the staff of Medicare and Medicaid facilities. The statute at issue in that case provided that "the Secretary [may] impose conditions on the receipt of Medicaid and Medicare funds that 'the Secretary finds necessary in the interest of the health and safety of individuals who are furnished services.'" 142 S. Ct. at 652 (citation omitted). The Court concluded that "[t]he rule thus fits neatly within the language of the statute." *Id*. The same is true here. The risk that unvaccinated staff members could transmit a deadly disease to children in Head Start programs—who are ineligible for the COVID-19 vaccine due to their young age—is plainly "a threat to the health" of the children. *See* 42 U.S.C. § 9832(2)(A)(i).

The Supreme Court noted in *Missouri* that "the longstanding practice of Health and Human Services" is relevant to this inquiry, *see* 142 S. Ct. at 652, and HHS has a history of regulating the health of Head Start staff in order to protect the children in the program. The previous version of 45 C.F.R. § 1302.93, which was in effect from November 2016 to November 2021, was titled "Staff health and wellness." That regulation provided that:

> A program must ensure each staff member has an initial health examination and a periodic re-examination as recommended by their health care provider in accordance with state, tribal, or local requirements, that include screeners or tests for communicable diseases, as appropriate. The program must ensure staff do not, because of communicable diseases, pose a significant risk to the health or safety of others in the program that cannot be eliminated or reduced by reasonable accommodation . . . .

45 C.F.R. § 1302.93(a) (effective until November 2021).  In the 1990s, HHS required that Head Start staff receive screenings for tuberculosis.  *See* 61 Fed. Reg. 57,186, 57,210, 57,223 (Nov. 5, 1996).  Furthermore, since 2016 Head Start regulations have required programs to "comply with state immunization enrollment and attendance requirements," 45 C.F.R. § 1302.15(e), and programs must evaluate whether newly-enrolled children comply with the "immunization recommendations issued by the Centers for Disease Control and Prevention," 45 C.F.R. § 1302.42(b)(1)(i).  HHS's history of regulating the health of Head Start children and staff provides further evidence that the vaccine requirement does not exceed the agency's statutory authority.

Because the plaintiffs do not show a likelihood of prevailing on the merits, we do not address the other factors that govern whether plaintiffs are entitled to an injunction pending appeal.  The motion for an injunction pending appeal is **DENIED**.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk